UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ERIC S. SIGMEN,

                      Plaintiff,                  **MEMORANDUM & ORDER**

      -against-

                                                   Civil Action No. 13-0268

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                      Defendant.
-------------------------------------------------------X

**APPEARANCES:**

**KELLY T. CURRIE**
**ACTING UNITED STATES ATTORNEY**
Attorney for Defendant
271-a Cadman Plaza East
Brooklyn, New York 11201
By: Candace Scott Appleton, Assistant U.S. Attorney

**HURLEY, Senior District Judge:**

        Plaintiff Eric C. Sigmen ("plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (the "Commissioner" or "defendant") which denied his claim for disability benefits. By Memorandum and Order dated January 20, 2015, the Court denied defendant's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and remanded this matter to the Commissioner for further proceeding consistent with its opinion. On January 22, 2015, judgment was entered. Presently before the Court is defendant's unopposed motion for reconsideration pursuant to Rule 59(e) and for stay of enforcement of the judgment pursuant to Rule 62(b) pending disposition of the motion. As discussed below, the motion pursuant to Rule

59 is denied as untimely, but construed as a brought under Federal Rule of Civil Procedure 60(b) and as so construed the motion is denied.

## PROCEDURAL BACKGROUND

On October 3, 2011, plaintiff filed an application for disability benefits alleging an inability to work as of March 22, 2011 due to "pain in his neck radiating down shoulder, arm [and] lower back." (Tr. 10, 187.) The initial claim was denied and a request for hearing filed. (Tr. 10, 57, 60-67.) A hearing was held on September 7, 2012 before Administrative Law Judge ("ALJ") April M. Wexler. (Tr. 22-56.) In a decision dated September 27, 2012, the ALJ found plaintiff was not disabled. (Tr. 7-21.) Plaintiff sought review of the unfavorable decision by the Appeals Council. (Tr. 235-36.) On November 26, 2012, the Appeals Council denied the request for review, which made the decision of the ALJ the final decision of the Commissioner. (Tr. 1-6.) This action was commenced on January 16, 2013 and defendant thereafter moved for judgment on the pleadings.

On January 20, 2015, the Court denied defendant's motion, remanding the matter to the Commissioner for further proceeding. The Court concluded that the ALJ failed to fully develop the record in accordance with applicable regulation because the ALJ did not request any of the treating doctors to opine on plaintiff's residual functional capacity (RCF). The Court reasoned:

> An ALJ's duty to develop the record includes ensuring that the record as a whole is complete and detailed enough to allow the ALJ to determine the claimant's RFC. *Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *7 (S.D.N.Y. Sept 21, 2007), *report and recommendation adopted by*, 2008 WL 461375 (S.D.N.Y. Feb. 20, 2008). The absence of an RFC statement from the record does not necessarily make the record incomplete. *Id.* at *8. (citing 20 C.F.R. § 404.1513(b)(6). However, where an RFC is

lacking, the Commissioner must take the affirmative step of requesting one before making a disability determination. *Johnson v. Astrue*, 811 F. Supp. 2d 618, 629 (E.D.N.Y. 2011). In other words, the Commissioner has an affirmative duty to request RFC assessments from a plaintiff's treating sources despite what is otherwise a complete medical history. *Id.* at 630.

An RFC determination indicates the most an individual can still do despite his or her impairments. 20 C.F.R. §404.1545(a). It takes into consideration the claimant's physical and mental limitations, symptoms, including pain, and all other relevant evidence in the case record. *Id.* With respect to physical abilities, the RFC assessment includes consideration of an individual's exertional capabilities, including the ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. §404.1545(b). Non-exertional limitations such as reaching, handling, stooping, or crouching are also considered. *Id.*

The Commissioner contends that the record supports its finding that Plaintiff could do sedentary work: "The ALJ correctly points out the treatment notes from Dr. Chernoff and Dr. Yland did not reveal any restrictions precluding lighter forms of employment . . . . Dr. Chernoff only advised Plaintiff to 'take it easy' and not do any heavy listing. . . . Likewise, Dr. Yland opined that plaintiff could not work in a position requiring lifting, pushing heavy objects, and/or repetitive activity related to his wrists and hands . . . ." Def. Mem at 18-19 (citations omitted.) This argument, however, ignores that "§ 404.1513(b)(6) states that a treating source's medical report should include '[a] statement about what [the claimant] can still do despite [his or her] impairments.'" *Robins v. Astrue*, 2011 WL 2446371, at *3 (E.D.N.Y. June 15, 2011).

Drs. Chernoff and Yland only state what plaintiff cannot do; it is unclear whether these are the only restrictions placed on plaintiff and the record contains no statement from these treating doctors as what plaintiff can still do. Specifically, Dr. Yland wrote in his March 2, 2012 that "[c]learly [plaintiff] cannot *continue* to work in a position that requires lifting, pushing heavy objects and/or repetitive activity related to his wrists and hands." (Tr. 456 (emphasis added).) Two weeks later he wrote "clearly, the patient is permanently and totally disabled from working his usual job at UPS . . . ." (Tr. 457.) These statements address only the requirements of plaintiff's position at UPS. At the very least, it is unclear whether these are the extent of the limitations that Dr. Yland, in his professional opinion, believes are necessary. The ALJ had a duty to seek clarification from Dr. Yland rather than infer that Dr. Yland's functional preclusion regarding heavier work vis a vis plaintiff's position at UPS, supported the ability to perform some lighter form of

3

> employment. Similarly, Dr. Chernoff's statement that plaintiff should "take it easy" and "not do any heavy lifting" is not a clear statement of plaintiff's residual functional capacity and the ALJ should have sought clarification. *See Felder v. Astrue*, 2012 WL 3993594, *13 (E.D.N.Y. Sept. 11, 2012) (remanding matter so ALJ could adequately determine plaintiff's RFC where treating physician did not opine with requisite specificity on plaintiff's ability to perform sedentary work).
>
> Thus, on remand the ALJ must seek clarification from plaintiff's treating sources as to their RFC assessment of plaintiff. To the extent the treating sources do not provide clarification, the ALJ should consider whether to seek expert testimony.
>
> Finally, the ALJ should re-evaluate the evidence after requesting clarification and consider whether that reevaluation alters the assessment of plaintiff's credibility.

Memorandum & Order, dated January 20, 2015, at 20-22. On January 22, 2015, judgment was entered in accordance with the Court's Order.

Twenty-seven days later, on February 18, 2015, defendant filed a letter on ECF addressed to plaintiff's counsel stating: "Enclosed please find the Notice of Motion and Memorandum of Law in Support of Defendant's Motion for Reconsideration and Relief from Judgment and For a Stay of the Judgment. Please send your courtesy copy of your papers to this office, with the government's copy. . . Once the matter is fully briefed, I will file the entire motion with the Court." [DE 16.] The letter filed on ECF did not include the enclosures.

On March 20, 2015, defendant filed a letter motion requesting permission to file its motion for reconsideration and relief from judgment. That letter stated in relevant part, "Pursuant to Your Honor's individual rules, no motion shall be filed with the Court until the motion has been fully briefed. Defendant's motion was served on February 18, 2015, and . . . [t]here has been no opposition from Plaintiff. Accordingly, the undersigned respectfully requests that Your Honor either issue an order allowing the Commissioner to file her motion as fully

4

briefed or, alternatively, issue an order directing Plaintiff to respond to the Commissioner's motion and setting a date for the filing of the fully briefed motion." DE 17.  In an Order dated March 24, 2015, the Court wrote, in reference to defendant's letter motion, "[t]he Court's Individual Practice Rules specifically exempt motions for reconsideration and motions pursuant to Fed. R. Civ. P. 51, 52, 59 and 60 from the bundle rule.  See Indiv. Practice Rule 3F.  Accordingly, defendant should proceed to file its motion, with the opposition and reply times governed by Local Rule 6.1(b)." Electronic Order dated March 24, 2015.[1]  Defendant filed it motion pursuant to Rule 59(e) on March 24, 2015, 61 days after entry of judgment.

## DISCUSSION

**I.     The Rule 59(e) Motion is Untimely**

Federal Rule of Civil Procedure 59(e) provides, "A motion to alter or amend a judgment must be filed no later than 28 days after entry of judgment."  A motion is filed when it is delivered to the clerk, which delivery may be by electronic means.  *See* Fed. R. Civ. P. 5(d)(2), (3). Pursuant to Federal Rule 6(b)(2) a Court may not extend the time to act under Rule 59(e). Fed. R. Civ. P. 6 (b)(2); *Roistacher v. Bondi*, - Fed. Appx. -, 2015 WL 5332088 (2d Cir. Sept. 15, 2015); *Lichtenberg v. Besicorp Group Inc.*, 204 F.3d 397 (2d Cir. 2000) (stating that the time limitation under Rule 59( e) is "uncompromisable" due to Rule 6(b)).  As this Rule 59(e) motion was not filed within 28 days of entry of judgment it is untimely.  However, an untimely Rule 59 (e) motion may be treated as a Rule 60(b) motion. *Lora v. O'Heaney*, 602 F.3d 106, 111 (2d Cir. 2010); *see also Branum v. Clark*, 927 F.2d 698, 704 (2d Cir. 1991).

---

[1] The Court's Individual Practice Rules also exempt motions pursuant to Rules 50, 52, 59, and 60 from its requirement of a pre-motion conference.  Indiv. Practice Rule 3A(i).

## II. Reconsideration Under Rule 60(b) is Denied

### A. Rule 60(b) Standard

Under Rule 60(b), the court may relieve a party from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

A Rule 60(b) motion for reconsideration is "a mechanism for 'extraordinary judicial relief' invoked only if the moving party demonstrates 'exceptional circumstances.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citation omitted). The decision whether to grant a party's Rule 60(b) motion for reconsideration is committed to the "sound discretion" of the district court. *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012). "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the court in deciding the original motion. *Id.*; *United States v. Gross*, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002).

Nor is it proper to raise new arguments and issues. *Gross*, 2002 WL 32096592 at *4. Still, "reconsideration may be granted to correct a clear error, or prevent manifest injustice.' " *Chamberlin*, 2006 WL 647785 at * 1 (citing *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992)).

B.     The Motion is Denied

Defendant maintains that this Court's conclusion that the ALJ failed to fully develop the record because he did not request any of the treating physicians to opine on plaintiff's RFC was contrary to law. Citing *Swiantek v. Comm'r of Social Sec.*, 558 Fed. Appx. 82, 84 (2d Cir. 2015) (summary order) and *Tankisi v. Comm'r of Social Sec.,* 521 Fed. Appx. 29 (2d Cir. 2013 (summary Order), defendant argues: "[T]he Second Circuit has stated, to the contrary, that an ALJ does not need to affirmatively obtain the RFC opinion of a treating physician." Def.'s Mem. at 4.

Putting aside the fact that rulings by Summary Order do not have precedential effect, neither case requires the Court to reconsider its conclusion.

The *Tankisi* plaintiff asserted that the ALJ committed error in assessing her RFC by failing to seek an opinion from her treating physician as to whether she could meet the physical demands of work. The Circuit rejected this claim. While the "plain text" of 20 C.F.R. §§ 404.1513(b)(6) and 416.913(b)(6), which states the commissioner "*will* request a medical source statement," "seems to impose on the ALJ a duty to solicit medical opinions," the Court concluded that other provisions of the regulations indicated otherwise. 521 Fed. Appx. at 33.

> [T]he text indicates that "medical reports should include . . . a statement about what you can still do despite your impairment," not that they must include such statements. . . . It also indicates that "the lack of the medical

7

> source statement will not make the report incomplete." . . . Other regulations also state that a case record "may contain medical opinions.". . . These provisions indicate that the ALJ's conclusions would not be defective if he requested opinions from medical sources and the medical sources refused. Taken more broadly, they suggest remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.

*Id*. at 33-34 (citations and brackets omitted). The Court went on to conclude that "[g]iven the specific facts of this case, including a voluminous medical record assembled by claimant's counsel that was adequate to permit an informed finding by the ALJ, we hold that it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity." *Id*. at 34.

The *Swiantek* Court similarly rejected an assertion that remand was necessary in light of the ALJ's failure to procure an opinion from one of the claimant's treating physician as to whether she was markedly impaired in the domain of caring for herself:

> The ALJ in this case based his findings on the psychiatric evaluation of a consultative psychologist who personally examined MLS as well as MLS's complete medical history and treatment notes, which themselves contained multiple psychological assessments of MLS. Although the Social Security regulations express a clear preference for evidence from the claimant's own treating physicians over the opinion rendered by a consultative examiner, see 20 C.F.R. § 416.912, this Court does not always treat the absence of a medical source statement from claimant's treating physicians as fatal to the ALJ's determination, *see Tankisi v. Comm'r of Soc. Sec*., 521 Fed. Appx. 29, 33–34 (2d Cir. 2013). Given the extensive medical record before the ALJ in this case, we hold that there were no "obvious gaps" that necessitate remand solely on the ground that the ALJ failed to obtain a formal opinion from one of MLS's treating physicians regarding the extent of MLS's impairments in the functional domain of caring for oneself.

588 Fed. Appx. at 84.

While *Swiantek* and *Tankisi* hold that the absence of a medical source statement from claimant's treating physician is not necessarily fatal to the ALJ's determination, they do not, as defendant suggests, preclude remand where an ALJ fails to request an opinion. In this case, remand was appropriate.

Here the ALJ relied upon Dr. Yland's "functional preclusion regarding heavier work" and the absence of restriction preclusive of sedentary work by Dr. Chernoff as supporting plaintiff's ability to perform some lighter form of employment. Admin Record at 14. However, as the Court noted in its decision, Dr. Yland's statements addressed only the requirements of plaintiff's position at UPS which required the lifting of 50 pounds. Accordingly, the ALJ should have sought clarification "rather than infer that Dr. Yland's functional preclusion regarding heavier work vis a vis plaintiff's position at UPS, supported the ability to perform some lighter form of employment."  Similarly, Dr. Chernoff's statements that plaintiff "take it easy" and "not do any heavy lifting" are rather amorphous and required clarification.  While the absence of a medical source statement may not necessarily be fatal to an ALJ's determination, in this case remand was appropriate.

## CONCLUSION

For the foregoing reasons, defendant's motion pursuant to Rule 59(e) for modification of the Court's January 20, 2014 Order is denied as untimely but construed as a motion pursuant to Rule 60(b) and as so construed, denied. The motion pursuant Rule 62 is denied as moot.

Dated: Central Islip, New York
      October  13, 2015

/s/   Denis R. Hurley
Denis R. Hurley
United States District Judge